**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**IN THE MATTER OF JACK'D UP CHARTERS LLC**               **CIVIL ACTION**

                                        **NO.  22-4535**
                                        **c/w  23-1073**
                                        **23-1074**

                                        **SECTION: "G"**

**ORDER AND REASONS**

These consolidated limitation of liability actions arise from an accident that allegedly occurred aboard a fishing vessel that collided with a pipe being pulled by two other vessels on a waterway in Venice, Louisiana.[1] Pending before the Court is Limitation Petitioner Jack'd Up Charters LLC's ("Jack'd Up Charters") "Motion for Summary Judgment."[2] Claimants Weeks Marine, Inc. ("Weeks") and Madere & Sons Towing, LLC ("Madere") oppose the motion.[3] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court denies the motion.

---

[1] Rec. Doc. 1-2 at 3; Rec. Doc. 38-2 at 1–3; Rec. Doc. 42 at 2–4.

[2] Rec. Doc. 38.

[3] Rec. Doc. 42.

1

## I. Background

### A.      Factual Background

Claimant Jeff Harrington ("Harrington") alleges that he suffered personal injuries when the vessel he was riding on collided with a pipe in the waterway on August 22, 2022.[4] Harrington alleges that "[a]t the time of the incident, the pipe was not visible, and Plaintiff's vessel was unaware of a pipe being between the two tugboats."[5] Jack'd Up Charters is the owner of the unnamed fishing vessel Harrington rode on.[6] Weeks owns and operates the tug M/V KENNETH M.[7] Madere owns and operates the tug M/V MASTER MYLES.[8] Harrington alleges that the pipe was pulled by Madere's tug and watched by Weeks.[9] Harrington avers that Madere and Weeks's negligence was the cause of his personal injuries.[10]

### B.      Procedural Background

On October 7, 2022, Harrington filed a petition in the 19th Judicial District for the Parish of East Baton Rouge.[11] Harrington named Madere and Weeks as Defendants and asserted negligence claims against them, but he did not name Jack'd Up Charters as a Defendant.[12]

---

[4] Rec. Doc. 1-2 at 3.

[5] *Id.*

[6] Rec. Doc. 1 at 1.

[7] Rec. Doc. 28 at 2.

[8] *Id.*

[9] Rec. Doc. 1-2 at 3.

[10] *Id.* at 3–4.

[11] *Id.* at 1.

[12] *Id.*

Thereafter, Jack'd Up Charters, Madere, and Weeks each filed separate limitation actions in federal court.

Jack'd Up Charters filed the first Limitation Action on November 16, 2022 in this Court.[13] On December 1, 2022, Madere filed an answer and asserted claims for contribution and indemnity in Jack'd Up Charters' Limitation Action,[14] and Weeks asserted the same on December 13, 2022.[15] In Madere's answer, Madere alleges that the injuries Harrington suffered abroad Jack'd Up Charters' fishing vessel "were due solely to the fault, negligence, unseaworthiness, or lack of due care on the part of [Jack'd Up Charters] and/or [Jack'd Up Charters'] vessel …"[16] In Weeks' answer, Weeks alleges that "[t]he collision occurred as a result of the negligence, unseaworthiness, fault, actions, inactions, and/or failure to exercise unreasonable care of the Unnamed Charter Fishing Vessel …, its Captain, Pilot, and/or crewmembers …"[17] On January 12, 2023, Harrington filed his claim in Jack'd Up Charters' Limitation Action, where he alleges that Weeks and Madere were negligent but did not allege the same of Jack'd Up Charters.[18]

Madere filed the second Limitation Action on January 20, 2023, in the Middle District of Louisiana.[19] Jack'd Up Charters then filed claims for contribution and indemnity on February 27,

---

[13] Rec. Doc. 1.

[14] Rec. Doc. 9 at 7.

[15] Rec. Doc. 10 at 10–11.

[16] Rec. Doc. 9 at 6.

[17] Rec. Doc. 10 at 9.

[18] Rec. Doc. 11.

[19] Case No. 23-1073, Rec. Doc. 1.

2023,[20] and Weeks did the same on March 17, 2023.[21] Harrington then filed a claim against this second Limitation Action on March 15, 2023, where he again alleges that Weeks and Madere were negligent but did not allege the same of Jack'd Up Charters.[22]

Weeks filed the third Limitation Action on February 16, 2023 in the Middle District of Louisiana.[23] Jack'd Up Charters was added as an interested party on February 28, 2023,[24] and it sought transfer of Weeks and Madere's Limitation Actions to this Court to be consolidated with the Limitation Action it filed on November 16, 2022.[25] A judge in the Middle District of Louisiana granted the motion and ordered transfer to this Court on March 24, 2023.[26] On May 5, 2023, the Court ordered all three Limitation Actions to be consolidated into the above captioned case.[27]

On July 7, 2023, the Court granted Harrington's Motion to Bifurcate Limitation Proceedings in which the Court would try the Limitations Claims and Harrington may return to state court for the damages phase if the Court denies Limitation for Madere, Weeks, and/or Jack'd Up Charters.[28] On July 10, 2023, Jack'd Up Charters filed the instant motion for summary

---

[20] Case No. 23-1073, Rec. Doc. 10 at 6–7.

[21] Case No. 23-1073, Rec. Doc. 20 at 10–11.

[22] Case No. 23-1073, Rec. Doc. 16.

[23] Case No. 23-1074, Rec. Doc. 1.

[24] Case No. 23-1074, Rec. Doc. 12.

[25] Case No. 23-1074; Rec. Doc. 20.

[26] *Id.*

[27] Rec. Doc. 23.

[28] Rec. Doc. 37.

judgment.[29]  On August 1, 2023, Weeks and Madere filed a response opposing Jack'd Up Charters' motion.[30]

## II. Parties' Arguments

### A.   *Jack'd Up Charters' Arguments in Support of the Motion*

Jack'd Up Charters moves for summary judgment.[31]  First, Jack'd Up Charters argues that Harrington has foreclosed any claims against it because Harrington did not name Jack'd Up Charters as a Defendant in his state court petition and otherwise has not alleged any fault or liability against Jack'd Up Charters in any of the Limitation Actions.[32]  Jack'd Up Charters notes that the monition deadline for asserting all claims in Jack'd Up Charters' Limitation Action was January 13, 2023[33] and that the parties represented to the Court during the January 31, 2023 Scheduling Conference that all pleadings have been completed.[34]  Jack'd Up Charters also contends that Harrington is factually precluded from asserting claims against it because Harrington stated that the dredge pipe was not visible and Jack'd Up Charters' fishing vessel was not aware of its presence on several instances, including in his petition, in his claims against Madere and Weeks in their respective Limitation Actions, and in his June 27, 2023 deposition.[35]  Jack'd Up Charters further notes that Harrington testified that the Captain of Jack'd Up Charters' fishing vessel "did

---

[29] Rec. Doc. 38.

[30] Rec. Doc. 42.

[31] Rec. Doc. 38.

[32] Rec. Doc. 38-2 at 4–6.

[33] *Id.* at 5 (citing Rec. Doc. 8).

[34] *Id.* (citing Rec. Doc. 18).

[35] *Id.* at 4–5 (citing Rec. Doc. 38-1 at 2; Rec. Doc. 38-3; Rec. Doc. 38-4 at 3–8).

nothing he felt was unsafe, did nothing to cause him concern about the Captain's judgment and that nothing occurred to cause him to question the ability of the Captain."[36]

Second, Jack'd Up Charters argues that Weeks and Madere are not entitled to contractual indemnity or tort indemnity, reasoning that it does not have any contractual relationships with Weeks or Madere that could contain indemnity obligations.[37] Jack'd Up Charters then explains that comparative fault, rather than tort indemnity, applies to the allocation of damages here and that it is easy to determine the proportionate degrees of fault between Jack'd Up Charters, Weeks, and Madere.[38]

Third, Jack'd Up Charters contends that Weeks and Madere are not entitled to contribution from Jack'd Up Charters because Harrington did not make any claims of legal liability against it and thus, Jack'd Up Charters does not share a common legal liability with Weeks or Madere that would require them to contribute to damages.[39] Jack'd Up Charters cites to *Simeon v. T. Smith & Son, Inc.* in support of its argument that "there can be no contribution between concurrent tortfeasors unless they share a common legal liability; and, if there was never any liability against the party cast in contribution, then there is no right to contribution."[40] Jack'd Up Charters also

---

[36] *Id.* at 5–6 (citing Rec. Doc. 38-1 at 2; Rec. Doc. 38-4 at 8–10).

[37] *Id.* at 6–7.

[38] *Id.* at 6.

[39] *Id.* at 7.

[40] *Id.* (citing *Simeon v. T. Smith & Son, Inc.*, 852 F.2d 1421, 1434 (5th Cir. 1988) (per curiam)).

notes that while Weeks and Madere may argue comparative fault to reduce the damages they may have to pay, this is different from the contribution claims they have asserted.[41]

### B.    Weeks and Madere's Response Opposing the Motion

Weeks and Madere filed a joint opposition to Jack'd Up Charters' motion.[42] Weeks and Madere argue that they both have asserted claims of fault against Jack'd Up Charters, and therefore made Jack'd Up Charters a joint tortfeasor for its own acts of negligence, fault, and unseaworthiness.[43] They reason then, it does not matter that Harrington did not allege any claims of fault against Jack'd Up Charters.[44]

Weeks and Madere reference several facts to argue that Jack'd Up Charters was liable for the incident. They point to the testimony of Jack Marino, the captain and owner of the Jack'd Up Charters fishing vessel, where he testified that the boat was traveling around thirty miles per hour and that there was "loud ambient noise on his boat" that prevented him from hearing any radio communications from Madere's M/V MASTER MYLES.[45] Weeks and Madere also point to the testimony of Captain Austin Stoute of Week's M/V KENNETH M, where he testified that "the dredge pipes were clearly visible and above water when the accident occurred."[46]

---

[41] *Id.* at 8.

[42] Rec. Doc. 42.

[43] *Id.* at 1–2.

[44] *Id.* at 2.

[45] *Id.* at 4 (citing to Rec. Doc. 42-1 at 1,3; Rec. Doc. 42-2 at 3–6).

[46] *Id.* (citing to Rec. Doc. 42-1 at 1; Rec. Doc. 42-3 at 7–8).

Based on the record, Weeks and Madere argue that Jack'd Up Charters violated several "Rules of the Road," regulations implemented by the government for the conduct of vessels traveling in waterways.[47] They conclude that "[t]here is a clear dispute as to fault and there is ample evidence showing that Jack'd Up Charters will bear significant fault for this collision."[48] Weeks and Madere contend that if Jack'd Up Charters violated these Rules of the Road, then "it is presumed to be liable under the *Pennsylvania Rule*."[49] Weeks and Madere explain that the *Pennsylvania Rule* is "a presumption in admiralty law that a statutory violation by a party to a collision is a cause of the damage unless it is established that the violation could not have caused or contributed to the collision."[50] Weeks and Madre conclude that "Jack'd Up Charters is presumed to be at fault for this collision and the burden shifts to Jack'd Up Charters to prove its violations were not a cause of the collision and could not have been."[51]

Weeks and Madre next argue that Jack'd Up Charters is a joint tortfeasor, so it cannot be dismissed. They note that "[u]nder general maritime law, an alleged tortfeasor may seek contribution … from one who may be comparatively negligent or a joint tortfeasor"[52] and reason that because they each have asserted claims against Jack'd Up Charters in their Limitation Actions alleging Jack'd Up Charters was negligent, Jack'd Up Charters should be considered a joint

---

[47] *Id.* at 4–9.

[48] *Id.* at 8.

[49] *Id.* at 9–10.

[50] *Id.* at 9 (citing to *Am. River Trans. Co. v. Kavo Kaliakra SS*, 148 F.3d 336, 449 (5th Cir. 1998) (internal citations omitted)).

[51] *Id.* at 10.

[52] *Id.* (citing to *Container Schiffahrts-GmbH & Co. v. New Orleans Terminal, LLC*, 22-1114, 2016 U.S. Dist. LEXIS 12738, at *19 (E.D. La. Feb. 3, 2016) (Barbier, J.).

tortfeasor.[53] Weeks and Madere further note that they have the right to name joint tortfeasors because they were the defendants in the original state court case and to "dismiss Jack'd Up Charters would violate Rule 56 of the Federal Rules of Civil Procedure because there is a genuine issue of material fact as to which party is at fault for the collision ..."[54] Weeks and Madere also argue that "a court may generally only dismiss indemnity and contribution claims when the joint tortfeasor has settled with the plaintiff or otherwise extinguished their right to sue."[55]

Weeks and Madere also contend that they do share a common legal liability with Jack'd Up Charters to Harrington because they have sued Jack'd Up Charters for its negligence, fault, and unseaworthiness to make Jack'd Up Charters a joint tortfeasor.[56] They further argue that the instant case here is distinguishable from *Simeon,* which Jack'd Up Charters cites, because in *Simeon*, the Jones Act precluded damages against a seaman's employer for loss of consortium.[57] However, they argue, there is no statute here barring Jack'd Up Charters' liability for Harrington's injuries.[58]

Weeks and Madere also argue that Jack'd Up Charters' motion is premature because the deposition deadline of August 31, 2023 has not passed yet and the depositions of the captain of Madere's M/V MASTER MYLES and the crews aboard two nearby tugs who were in the vicinity

---

[53] *Id.* at 10–11.

[54] *Id.* at 12–13.

[55] *Id.* at 13 (citations omitted).

[56] *Id.* at 15.

[57] *Id.* at 14–15 (citing *Simeon.*, 852 F.2d at 1434).

[58] *Id.*

of the collision have not yet been completed.[59] They point to Rule 56(d), which in part, allows a

court to defer or deny a motion for summary judgment when discovery is incomplete and facts are

still needed to resolve the dispute. They reason here that "[t]here is still a dispute as to the location,

course and trajectory of the fishing boat" and "a dispute as to whether the dredge pipes in tow were

clearly above the water and visible at the time of the collision."[60]

### III. Legal Standard

Summary judgment is appropriate when the pleadings, discovery, and affidavits

demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as

a matter of law."[61] To decide whether a genuine dispute as to any material fact exists, the court

considers "all of the evidence in the record but refrains from making credibility determinations or

weighing the evidence."[62] All reasonable inferences are drawn in favor of the nonmoving party.[63]

Yet "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and

conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[64]

If the entire record "could not lead a rational trier of fact to find for the non-moving party," then

no genuine issue of fact exists and, consequently, the moving party is entitled to judgment as a

---

[59] *Id.* at 15–16.

[60] *Id.* at 16.

[61] Fed. R. Civ. P. 56(a); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[62] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co., 530 F.3d 395, 398–99 (5th Cir. 2008) (*citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

[63] *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Reeves*, 530 U.S. at 150).

[64] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

matter of law.[65]  The nonmoving party may not rest upon the pleadings.[66]  Instead, the nonmoving party must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[67]

The party seeking summary judgment always bears the initial responsibility of showing the basis for its motion and identifying record evidence that demonstrates the absence of a genuine issue of material fact.[68]  "To satisfy this burden, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element of the opponent's claim or defense."[69]  If the moving party satisfies its initial burden, the burden shifts to the nonmoving party to "identify specific evidence in the record, and to articulate" precisely how that evidence supports the nonmoving party's claims.[70]

The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[71]  Moreover, the

---

[65] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[66] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[67] *See id.*; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[68] *Celotex Corp.*, 477 U.S. at 323.

[69] *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991) (quoting *Little v. Liquid Air Corp.*, 939 F.2d 1293, 1299 (5th Cir. 1991)).

[70] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[71] *Little*, 37 F.3d at 1075 (internal citations omitted).

nonmoving party may not rest upon mere allegations or denials in its pleadings.[72] Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.

However, "where the movant bears the burden of proof at trial, the movant 'must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor. Once the movant does so, the burden shifts to the nonmovant to establish an issue of fact that warrants trial.'"[73] The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."[74]

## IV. Analysis

Jack'd Up Charters argues that summary judgment is appropriate because Harrington is foreclosed from asserting claims of liability against Jack'd Up Charters for both legal and factual reasons.[75] Jack'd Up Charters also contends that summary judgment on Weeks and Madere's indemnity and contribution claims is appropriate because they are not legally viable.[76] Weeks and Madere counter that because they have asserted claims of fault against Jack'd Up Charters to make Jack'd Up Charters a joint tortfeasor, dismissal of their indemnity and contribution claims is

---

[72] *Morris*, 144 F.3d at 380.

[73] *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 302 (5th Cir. 2020).

[74] *Ridgeway v. Pfizer, Inc.*, No. 09-2794, 2010 WL 1729187, at *1 (E.D. La. Apr. 27, 2010) (Vance, J.).

[75] Rec. Doc. 38-2.

[76] *Id.*

inappropriate at the summary judgment stage.[77]  They further contend that summary judgment for Jack'd Up Chaters is inappropriate because discovery is incomplete and there are genuine disputes of material fact as to the liability of Jack'd Up Charters, Weeks, and Madere.[78]

## A.   *Weeks and Madere's Indemnity Claims*

The Fifth Circuit recognizes three broad theories of indemnity in maritime law: (1) tort indemnity where a vicariously liable or non-negligent tortfeasor's co-debtor is liable for actual fault,[79] (2) under the *Ryan* doctrine where a vessel owner entrusts his vessel to a contractor who rendered the vessel unseaworthy and the owner did not directly contribute to the unseaworthy condition,[80] and (3) contractual indemnity.[81]  A tort indemnity claim may arise in three ways:

> "(1) when there is an indemnitor and indemnitee relation and consequent duty owed; (2) when there is a significant difference in the indemnitor and indemnitee's degree of conduct; and (3) when there is a difference in the character of the duties owed by the two to the injured party."[82]

The Fifth Circuit law on tort indemnity in maritime cases is mixed.  In *Rockwell International Corporation v. M/V Incontrans Spirit*, the Fifth Circuit held that "Incotrans cannot recover indemnification of its defense costs from Fairway or the Port Authority" even though it "was innocent of fault."[83]  Traditionally, tort indemnity meant "full indemnity" where the total loss

---

[77]  Rec. Doc. 42.

[78]  *Id.*

[79]  *Hardy v. Gulf Oil Corp.*, 949 F.2d 826, 833 (5th Cir. 1992) (citing *Marathon Pipe Line Co. v. Drilling Rig ROWAN/ODESSA*, 761 F.2d 229, 236 (5th Cir. 1985)).

[80]  *Id.* at 834 (citing *Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp.*, 350 U.S. 124 (1956)).

[81]  *Id.*

[82]  *LCI Shipholdings, Inc. v. Muller Weingarten AG*, 153 Fed. Appx. 929, 931 (5th Cir. 2005) (citing *Cities Serv. Co. v. Lee–Vac, Ltd.*, 761 F.2d 238, 240 (5th Cir. 1985)).

[83]  *Rockwell Int'l Corp. v. M/V Incotrans Spirit*, 998 F.2d 316, 319 (5th Cir. 1993) (citing *Bosnor, S.A. de.*

would be allocated to the joint tortfeasor who was found to be at greater fault compared to other joint tortfeasors in a joint liability situation.[84] However, more recent Fifth Circuit cases have clarified that full indemnity is only available "when there is a significant difference in the indemnitor and indemnitee's degree of conduct,"[85] "where proportionate degrees of fault cannot be determined on a rational basis or where the party claiming indemnity is one on which the law imposes responsibility even though [it] committed no negligent acts."[86] If the party seeking indemnity is partially at fault, the Fifth Circuit has suggested that full indemnity is not available as they "have consistently held that partial fault is incompatible with full indemnity."[87] Instead, the Fifth Circuit has adopted a comparative fault system where damages are allocated based on the proportionate fault of joint tortfeasors as a replacement to traditional full indemnity.[88] One treatise has acknowledged that "[i]n maritime law, the courts have generally replaced full indemnity with a comparative fault system" and remarked that "partial indemnity[] is essentially contribution."[89]

Here, Weeks and Madere have asserted valid tort indemnity claims against Jack'd Up Charters, and summary judgment is not appropriate on this issue as there is a genuine dispute of material fact as to Jack'd Up Charters, Weeks, and Madere's proportional fault for the collision of

---

*C.V. v. Tug L.A. Barrios*, 796 F.2d 776 (5th Cir. 1986)).

[84] 1 Thomas J. Schoenbaum, *Admiralty and Maritime Law*, § 5:16 (6th ed. 2022).

[85] *LCI Shipholdings*, 153 Fed. Appx. at 931.

[86] *GIC Serv., L.L.C. v. Freightplus USA, Inc.*, 866 F.3d 649, 663–64 (5th Cir. 2017) (quotations and citations omitted).

[87] *Id.* at 664. *See also Sea-Land Serv., Inc. v. Crescent Towing & Salvage Co.*, 42 F.3d 960, 963 (5th Cir. 1995) (holding that when a defendant is partially at fault, they are "not entitled to full indemnity.").

[88] *Id.*

[89] 1 Clark Boardman Callaghan, *Comparative Negligence Manual* § 9:18 (3rd ed. 2023).

the vessels and Harrington's resulting injuries. Although Harrington alleges that the pipe was not visible in the waterway and his testimony indicates that he does not believe the captain of Jack'd Up Charters' vessel to be at fault for the collision, Weeks and Madere have pointed to facts in the existing record that point to the contrary. These disputed facts include the visibility of the pipe in the water, the loud noise levels on Jack'd Up Charters' vessel that may have prevented the captain from hearing radio communications about oncoming vessels, and the speed at which Jack'd Up Charters' vessel was traveling, to create a genuine dispute of material fact as to the proportional fault of Jack'd Up Charters, Weeks, and Madere for the collision that led to Harrington's injuries. At this stage, it cannot be determined that Weeks, Madere, and/or Jack'd Up Charters were zero percent at fault for the collision since key witnesses who are likely to provide material facts relevant to determining the proportional fault of each party, such as the captain of Madere's MASTER MYLES and the crew of a nearby vessel who may have witnessed the collision, have not yet been deposed. In addition, a factfinder has not yet weighed the evidence to determine the proportional fault of each party. A finding of each party's proportional fault is necessary before it can be determined whether Weeks and/or Madere may seek full, partial, or no indemnity from Jack'd Up Charters.[90]

## B.      *Weeks and Madere's Contribution Claims*

Under general maritime law, joint tortfeasors are held jointly and severally liable to a plaintiff.[91] The joint tortfeasor's liability is determined through comparative or proportionate

---

[90] *See GIC Serv.*, 866 F.3d at 665 (affirming the district court's order requiring the vessel owner to indemnify the carrier operator for 30% of the judgment since the carrier operator was 70 percent at fault and the vessel owner was 30 percent at fault).

[91] *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 220 (1994).

fault.[92]  To reconcile comparative fault with joint and several liability, maritime law recognizes the right of contribution between joint tortfeasors.[93]  The right of contribution allows a defendant that pays more than its *pro rata* share of a judgment to collect from other parties their allocated portions of the judgment based on comparative fault.[94]  A contribution cause of action, arises then, when a tortfeasor actually pays more than its share of the judgment.[95]  An exception to the general rule of joint liability and contribution is if a statute exists to bar liability against the joint tortfeasor that a tortfeasor is seeking contribution from.[96]

> In *Simeon*, the Fifth Circuit held that:
>
> The traditional view is that there can be no contribution between concurrent tort-feasors unless they share a common legal liability toward the plaintiff. The contribution action arises from the original obligation that the party cast in contribution owed to the plaintiff. If there was never any such liability, as where the contribution defendant has the defense of family immunity, assumption of risk, or the application of an automobile guest statute, or the substitution of worker's compensation for common law liability, then there is no liability for contribution.[97]

The plaintiff, Simeon, sued his employer Smith and vessel owner Lumar for the injuries he suffered while working as a deckhand on a derrick barge.[98]  Smith and Lumar then both filed cross-claims against each other for contribution.[99]  The Fifth Circuit concluded that allowing "Lumar an action

---

[92] *United States v. Reliable Transfer Co.*, 421 U.S. 397, 411 (1975).

[93] Schoenbaum, Admiralty and Maritime Law, § 5:16.

[94] *Id.*

[95] *Id.*

[96] *See Simeon*, 852 F.2d at 1434.

[97] *Id.* at 1434 (citations and quotations omitted).

[98] *Id.* at 1423.

[99] *Id.* at 1424.

in contribution against Smith would be inconsistent with our cases holding that the Jones Act employer is not responsible for loss of consortium damages."[100] Thus, because the Jones Act statutorily barred liability against Smith, Lumar could not seek contribution from Smith.

The Court finds that Jack'd Up Charters, Weeks, and Madere share a common legal liability as to Harrington's injuries since it is plausible that Jack'd Up Charters, Weeks, and Madere share fault for the vessels' collision that led to Harrington's injuries. While Harrington has alleged that only Weeks and Madere are at fault for the collision that resulted in his injuries, Weeks and Madere have alleged that Jack'd Up Charters is at fault. As the owner of the vessel that Harrington rode on, Jack'd Up Charters owed an original obligation to Harrington and Jack'd Up Charters has not identified any "defense of family immunity, assumption of risk, [] the application of an automobile guest statute, or the substitution of worker's compensation for common law liability" or any other statute barring its liability.[101] Nor is the Court aware of any statute barring Jack'd Up Charters' liability. Although Harrington, as the plaintiff in the underlying maritime tort case, has not alleged that Jack'd Up Charters is at fault, cases from the federal district courts of Louisiana suggest that a defendant can assert contribution claims against a third-party defendant.[102] As

---

[100] *Id.* at 1434 (citation omitted).

[101] *Simeon*, 852 F.2d at 1434; *Walls Indus., Inc. v. U.S.*, 958 F.2d 69, 71–72 (5th Cir. 1992) (holding that the government could not be liable to a manufacturer who sought contribution for an injured employee's claim because the employee's claim against the government was barred by the exclusive liability provision of the Federal Employee's Compensation Act).

[102] *See In re Two-J Ranch, Inc.*, 534 F. Supp. 2d 671, 688 (W.D. La. 2008) (Drell, J.) (denying third-party defendant Tower Rock's motion for summary judgment to dismiss the contribution claims defendants asserted against it because the "time bar of [the plaintiff's] claim against Tower Rock has no effect on [defendants'] contribution claim against Tower Rock."); *Pilette v. United Marine Offshore LLC*, 447 F. Supp. 3d 517, 519–21 (W.D. La. 2020) (Juneau, J.) (denying third-party defendant Sewart's motion for summary judgment because Sewart and the defendant United Marine shared a common legal liability stemming from "failures and omissions regarding the M/V MISS ALLIE which resulted in [the] Plaintiff's injuries.").

17

discussed above, there is a genuine dispute of material fact as to the proportional fault of Jack'd Up Charters, Weeks, and Madere. In addition, it is too early to determine if Jack'd Up Charters underpaid its *pro rata* share of damages to Harrington that would require Weeks or Madere to seek contribution from Jack'd Up Charters, as proportional fault of the parties have not yet been decided. Therefore, dismissing Weeks and Madere's contribution claims against Jack'd Up Charters is inappropriate at the summary judgment stage.

Accordingly,

**IT IS HEREBY ORDERED** that Jack'd Up Charters' "Motion for Summary Judgment"[103] is **DENIED.**

**NEW ORLEANS, LOUISIANA**, this  5th  day of September, 2023.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[103] Rec. Doc. 38.

18